J-A10007-16

2016 PA Super 289

| | |
|---|---|
| RITA M. RICHARDS and CAROLINE J. RICHARDS, Co-Executrices of the ESTATE OF JAMES G. RICHARDS and RITA M. RICHARDS and CAROLINE J. RICHARDS, Co-Executrices of the ESTATE OF HELEN RICHARDS<br><br><br>v.<br><br>AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., RIVERSOURCE LIFE INSURANCE COMPANY and THOMAS A. BOUCHARD<br><br>Appellants | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br>No. 265 WDA 2015 |

Appeal from the Judgment Entered November 14, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): G.D. 01-006614

| | |
|---|---|
| RITA M. RICHARDS and CAROLINE J. RICHARDS, Co-Executrices of the ESTATE OF JAMES G. RICHARDS and RITA M. RICHARDS and CAROLINE J. RICHARDS, Co-Executrices of the ESTATE OF HELEN RICHARDS<br><br>Appellants<br><br>v.<br><br>AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., RIVERSOURCE LIFE INSURANCE COMPANY and THOMAS A. BOUCHARD | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br>No. 307 WDA 2015 |

Appeal from the Judgment Entered November 14, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 01-006614

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

OPINION BY PANELLA, J.:                    **FILED DECEMBER 16, 2016**

Appellants, Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., Riversource Life Insurance Company, and Thomas A. Bouchard, appeal from the judgment entered in the Allegheny Court of Common Pleas, in favor of Appellees, the Estate of James G. Richards and the Estate of Helen Richards,[1] finding Appellants violated the Unfair Trade Practices Consumer Protection Law ("UTPCPL"), awarding treble damages and punitive damages, and allowing Appellees' counsel to submit a petition for their fees and costs, which resulted in the subsequent award of attorneys' fees and costs in favor of Appellees. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.[2]

The relevant facts and procedural history of this case are as follows. In 1994, Thomas Bouchard ("Bouchard"), a financial advisor of IDS Life, approached Mr. James G. Richards and Mrs. Helen Richards (collectively, "the Richards"), who were existing customers of IDS Life, and requested to perform a financial analysis for them. The Richards accepted Bouchard's request. After the analysis was complete, Bouchard and the Richards met to discuss the results. Bouchard explained that based on Mr. Richard's decision

---

[1] Mrs. Helen Richards initially brought this case; however, Mrs. Richards died on November 6, 2015, and the Estate of Helen Richards is now proceeding in her place.

[2] Appellees in this case filed conditional cross-appeals and thus are conditional Cross-Appellants. For reasons set forth later in this opinion, we need not address the issues raised in the cross-appeals because we have not completely reversed the judgment of the trial court relating to the UTPCPL claim.

to take his pension without leaving much of a surviving pension for his spouse, the Richards faced a pension gap, meaning Mrs. Richards would not have enough money to cover her monthly expenses if Mr. Richards died first.

To solve this dilemma, Bouchard recommended that Mr. Richards purchase a $100,000.00 IDS Life Flexible Premium Adjustable Whole Life Insurance Policy so Mrs. Richards would receive the Policy's death benefit upon Mr. Richard's death. The Richards agreed to purchase the Policy at a monthly premium payment of $500.00 with an annually scheduled premium of $6,000.00. Mrs. Richards testified that Bouchard "just said the $100,000[.00 Policy] . . . was going to cost us $500[.00] a month." N.T. Deposition of Mrs. Richards, 5/9/11, at 58. Bouchard provided the Richards with a Ledger Statement (otherwise commonly referred to as an Illustration) indicating the terms of the Policy.

In 2000, Bouchard and the Richards met regarding the Policy. Bouchard testified that the meeting arose because the Richards did not want to continue paying $500.00 per month in premium payments, so they sought Bouchard's advice regarding their options. In preparation for the meeting, Bouchard reviewed the Richards' finances and the Policy and discovered the payment of $500.00 per month was no longer sufficient to fund the Policy and that it might lapse prematurely due to lower than expected interest rates. Given this information, Bouchard relayed to the Richards different options they could take regarding the Policy, which

included a reduction of the death benefit, to make a lump sum payment into the Policy and continue paying premiums for a shorter time, or to increase the monthly premium payments for a period of time. The Richards opted to pay a lump sum payment into the Policy of $15,053.09 and agreed to pay premiums for a shorter period of time. As a part of the transaction, Bouchard prepared a document titled "Explanation of Transaction" which contained the following handwritten section: "We wished to add these additional funds to our present life policy to allow us to reduce the amount of time we will need to pay future premiums and to keep the policy in force due to lower than expected interest rates. Also this will not be subject to inheritance tax at our death." Explanation of Transaction, at 3.

Mr. Richards died on February 20, 2005. Ameriprise paid the $100,000.00 death benefit to Mrs. Richards shortly thereafter. The total amount of premium payments the Richards paid into the Policy for the $100,000.00 death benefit was approximately $78,500.00

This suit was filed in 2001. Mrs. Richards sought damages for the $15,053.09 payment, plus interest, arguing that when Bouchard sold the Policy, he represented that no payments beyond the $500.00 monthly premium were required to fund it. The complaint asserted causes of action against Appellants for negligent misrepresentation, fraudulent misrepresentation, violation of the UTPCPL, breach of fiduciary duty, and negligent supervision. Appellants moved for summary judgment claiming

that Appellees failed to state legally sufficient claims, and on February 11, 2014, the court entered an order denying summary judgment in favor of Appellees as to the misrepresentation claims and UTPCPL claim, but granting summary judgment in favor of Appellants as to the breach of fiduciary duty and negligent supervision claims. In its opinion, the court stated: "M[r]s. Richards' testimony [would] support a finding that [Bouchard] represented that the insurance policy would remain in full force and effect until [Mr. Richards'] death if [Appellees] made $500.00 per month payments until [Mr. Richards'] death[;]" and "the document titled *Explanation of Transaction* which states, *inter alia*, that the additional funds [would] keep the policy in force due to lower than expected interest rates may support a finding that the additional $15,053.09 payment was made because otherwise the policy would not remain in full force and effect as represented." Trial Court Opinion, filed 2/11/14, at 1 (emphasis in original).

A bench trial was held on October 30, 2014, and November 3-4, 2014, on Appellees' misrepresentation claims and UTPCPL claim. On November 14, 2014, the court entered a verdict dismissing the fraudulent misrepresentation and negligent misrepresentation claims for Appellees' failure to sustain a burden of proof, but finding for Appellees on the UTPCPL claim and awarding treble damages and punitive damages, and allowing Appellees' counsel to submit a petition for their fees and costs. Appellees'

counsel thereafter submitted a fee petition that contained time related to litigating the UTPCPL claim.

On November 21, 2014, Appellants filed a post-trial motion seeking relief on the UTPCPL claim. The Estate of James G. Richards also filed a post-trial relief motion on November 25, 2014, relating to the court's admission of evidence in contravention of the Dead Man's Act, 42 Pa.C.S.A. § 5930. The court subsequently denied both of these requests.

Following briefing on the petition for attorneys' fees and costs, the court entered an order on January 20, 2015, awarding counsel fees in favor of Appellees for $84,072.50 to Behrend and Ernsberger, P.C., and costs for $1,759.58, and counsel fees for $26,840.00 to the Massa Law Group. On January 29, 2015, Appellants filed a post-trial motion for relief relating to court's award of attorneys' fees and costs, but the court subsequently denied Appellants' request.

Appellants filed a timely notice of appeal and Appellees filed notice of conditional cross-appeals. Thereafter, the court ordered Appellants and Appellees to file concise statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b); Appellants and Appellees timely complied. The court then filed an opinion. The panel found the trial court's opinion deficient and remanded "for the preparation of a comprehensive opinion pursuant to Rule 1925(a)…." **Richards v. Ameriprise Financial, Inc.**, No(s). 265 WDA 2015 and 307 WDA 2015, at 4 (Pa. Super., filed July 19,

2016) (unpublished per curiam memorandum). The trial court filed a supplemental opinion on September 21, 2016.

Before we proceed to the merits, we must address the trial court's supplemental opinion. After its filing, Appellants filed an "Application for Leave to File Brief in Response to the Supplemental Opinion of the Trial Court" ("Application"). In that filing, Appellants noted that their reason for seeking leave to file a response to the trial court's opinion stems from the supplemental opinion's raising "factual and legal issues that were not previously briefed by the parties…." Application, filed 9/26/16, at ¶ 8.

The supplemental opinion is lacking. It contains no citations to the voluminous record. And the few legal citations provided are largely inapposite. In this complex case, a more carefully crafted and thorough opinion would have made for far more efficient appellate review. But the supplemental opinion, deficient as it is, provides the court's findings that permit resolution of the case. We refuse to delay the resolution of this appeal any further. We deny Appellant's Application and proceed to the merits.

Appellants raise the following issues for our review:

WHETHER THE TRIAL COURT ERRED IN ENTERING A VERDICT FOR [APPELLEES] UNDER THE PRE-AMENDMENT [UTPCPL]— WHICH REQUIRES PROOF OF THE COMMON LAW ELEMENTS OF FRAUD—DESPITE EXPRESSLY FINDING THAT [APPELLEES] FAILED TO PROVE EVEN A NEGLIGENT MISREPRESENTATION?

IN THE ALTERNATIVE, WHETHER THE TRIAL COURT ERRED IN ENTERING A NON-JURY VERDICT ON THE UTPCPL CLAIM DESPITE NO EVIDENCE OF CAUSATION?

WHETHER THE TRIAL COURT ERRED IN ITS AWARD OF ATTORNEYS' FEES UNDER THE UTPCPL BECAUSE THE AMOUNT AWARDED IS UNREASONABLE?

[WHETHER] THE TRIAL COURT ERRED BY AWARDING BOTH PUNITIVE AND TREBLE DAMAGES UNDER THE UTPCPL?

Appellants' Brief, at 5.[3]

For purposes of disposition, we address Appellants' issues together. Appellants argue that Appellees' claim brought under the UTPCPL's catch-all provision requires application of the pre-amendment version of the statute, which originally prohibited "engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding," **see** 73 Pa.S.A. § 201-2(4)(xvii), because the Policy was sold to the Richards in 1994 and the alleged misrepresentation occurred in 1994 before the statute was amended in 1996. Otherwise, Appellants complain the application of the amended statute would result in an impermissible retroactive application of the law.

Appellants contend the UTPCPL claim must fail for Appellees' failure to meet their burden to sustain it. Appellants explain to prove a claim under the pre-amendment UTPCPL, Appellees were required to demonstrate the elements of common law fraud by a preponderance of the evidence. Appellants emphasize that the trial court expressly found Appellees failed to sustain their burden of proof for the fraudulent misrepresentation and

---

[3] For purposes of disposition, we have rearranged Appellants' issues.

negligent misrepresentation claims. These claims, Appellants contend, have identical elements except that negligent misrepresentation has a lesser scienter requirement than fraudulent misrepresentation. So, Appellants aver because the court expressly found that they did not prove the elements of even the negligent misrepresentation claim by a preponderance of the evidence, the UTPCPL claim should likewise fail for Appellees' failure to meet their burden of proof.

Alternatively, Appellants assert the UTPCPL claim must fail because Appellees failed to prove an ascertainable loss was caused by the alleged misrepresentation. Specifically, Appellants maintain Appellees were required to show that "but for" the prohibited actions, Appellees would not have suffered an ascertainable loss. Appellants complain the record is devoid of evidence indicating that the lump sum payment occurred as the result of Bouchard's alleged misrepresentation and the court impermissibly inferred causation simply because the Richards tendered the lump sum payment into the Policy after Bouchard recommended they do so.

Appellants urge the trial court improperly granted Appellees' petition for attorneys' fees for all of the time requested because Mr. Behrend, counsel for Helen Richards, has been involved in insurance litigation for thirty years; only three witnesses were called to testify at the bench trial; Appellees' claims are identical to a number of claims litigated by Mr. Behrend; and the court failed to analyze the fee petition for reasonableness.

Appellants submit the UTPCPL does not confer the right to punitive damages, so the trial court's imposition of $50,000.00 in punitive damages against Appellants constitutes reversible error. Alternately, Appellants contend the lump sum payment was not such "outrageous" conduct as that prohibited under the statute so as to award additional fees to Appellees. Appellants conclude this Court should reverse the verdict of the trial court and enter a verdict for Appellants on the UTPCPL claim, and reverse the trial court's award of punitive damages and its award of attorneys' fees. We disagree in part and agree in part.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

**Wyatt, Inc. v. Citizens Bank of Pennsylvania**, 976 A.2d 557, 564 (Pa. Super. 2009) (citation and internal quotations omitted; brackets in original).

Preliminarily, we address Appellants argument that the pre-amended version of the UTPCPL applies to the instant case. Statutory interpretation presents a question of law. **See Snead v. Soc'y for Prevention of Cruelty**

***to Animals of Pa.,*** 985 A.2d 909, 912 (Pa. 2009). Thus, our standard of review is *de novo,* and our scope of review is plenary. ***See id****.* Here, the allegedly deceptive practices that support Appellees' UTPCPL claim all occurred prior to the date on which the UTPCPL was amended.[4] Accordingly, the pre-amended version of the statute controls. ***See Yenchi v. Ameriprise Fin., Inc.***, 123 A.3d 1071, 1083-84 (Pa. Super. 2015), *appeal granted*, 134 A.3d 51 (Pa. 2016) (finding the date on which IDS Life Insurance policy was issued occurred prior to the UTPCPL amendment and therefore the pre-amendment version of the statute controlled).

The UTPCPL is Pennsylvania's consumer protection law. It seeks to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…." 73 P.S. § 201–3. Its aim is to protect the public from unfair or deceptive business practices. ***See Agliori v. Metropolitan Life Ins. Co.,*** 879 A.2d 315, 318 (Pa. Super. 2005). Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection. ***See Com., by Creamer v. Monumental Properties, Inc.,*** 329 A.2d 812, 816-17 (Pa. 1974).

The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" because of an unlawful method, act or practice. ***See*** 73 P.S. § 201–9.2(a). Upon a finding of

---

[4] The Policy was issued in 1994.

liability, the court has the discretion to award "up to three times the actual damages sustained" and provide any additional relief the court deems proper. *Id.* However, the statute does not "confer a right to [impose] punitive damages." ***McCauslin v. Reliance Fin. Co.***, 751 A.2d 683, 685 (Pa. Super. 2000). Section 201–2(4) lists twenty enumerated practices which constitute actionable "unfair methods of competition" or "unfair or deceptive acts or practices." 73 P.S. § 201–2(4)(i)–(xx). The UTPCPL also contains a catchall provision at 73 P.S. § 201–2(4)(xxi). The pre–amended catchall provision prohibited "fraudulent conduct" that created a likelihood of confusion or misunderstanding. 73 P.S. § 201–2(4)(xvii).[5]

To bring a private cause of action under the pre-amended version of the catchall provision of the UPTCPL, a plaintiff must establish common law fraud by a preponderance of the evidence. ***See Weinberg v. Sun Co., Inc.***, 777 A.2d 442, 446 (Pa. 2001) ("Nothing in the legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation."); ***Boehm v. Riversource Life Ins. Co.***, 117 A.3d 308, 323 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1281 (Pa. 2015) (holding to establish a claim for common law fraud under the pre-amended catchall provision of the UTPCPL, the elements must be proven by a preponderance of the evidence). The elements of common law fraud include:

---

[5] Prior to 1996, the catchall provision was codified at 73 P.S. § 201–2(4)(xvii). It was recodified at 73 P.S. § 201–2(4)(xxi).

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (footnote omitted). In other words, "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.,* 854 A.2d 425, 438 (Pa. 2004) (citations omitted). Justifiable reliance in the non-commercial life insurance context is typically a question of fact and often involves credibility determinations for the fact-finder to decide, because the fact-finder must consider "the relationship of the parties involved and the nature of the transaction" to determine whether the purchasers justifiably relied upon the agent's representations to the extent necessary to support their UTPCPL claim. *DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 592-93 (Pa. Super. 2013) (citing *Drelles v. Manufacturers Life Ins. Co.*, 881 A.2d 822, 841 (Pa. Super. 2005)). To recover damages under the UTPCPL, a plaintiff must demonstrate "an ascertainable loss *as a result of* the defendant's prohibited action." *Weinberg*, 777 A.2d at 446 (emphasis in original).

Instantly, the trial court provided the following reasoning for its disposition:

[The Richards] became clients of [Bouchard] in 1994. They retained Bouchard as their financial advisor on an annual basis for an annual fee of $300.00. [Bouchard] was also an agent of IDS [Life] Insurance, which eventually became Ameriprise.

In July of 1994, the Richards met with Bouchard at his office in Washington, PA. Bouchard warned them that they were facing a potential pension trap, wherein Mrs. Richards could suffer a substantial reduction in income should Mr. Richards pass first.

[Bouchard] presented the Richards with a financial plan, which included the proposed purchase of a $100,000.00 [IDS Life Flexible Premium Adjustable Whole Life Insurance Policy] on Mr. Richards' life. [Bouchard] showed the Richards an Illustration and application. The application [became] part of the contract.

The Illustration demonstrated that the [annually scheduled] premium payments on the Policy would remain $6,000.00 per year, for the life of the Policy . . . and then go to zero payments. The monthly [premium] payments would remain at $500[.00] per month for the life of the Policy. The Illustration also assumed that the interest rates would be 8% for the life of the Policy, although the [applicable interest rate] in July of 1994 was 6.75%. The application indicated the same. Neither [e]xhibit contained any information that would alert any consumer that a fluctuation of interest rates of any other occurrence could result in an extra payment or an increase in premiums at a future date. When examined at trial [Bouchard] and corporate witness Mr. Freiler could not ascertain that either the Illustration or application contained any information indicating that the Policy may not continue at the same premiums for its life.

Further, Mrs. Richards testified that [Bouchard] assured her and Mr. Richards that the level of payments of $500[.00] per month would be all that was needed to keep the Policy in force for life. The Richards made the application for the [Policy] in reliance upon [Bouchard's] recommendations….

The Richards' application was accepted and they received their Policy in August of 1994. The Policy itself set forth no information which would conflict with the information contained in the Illustration and the application. Mr. Freiler, a representative of Ameriprise, could not identify any section of the exhibits which would alert a consumer that anything more

than the scheduled payments would be needed to keep the Policy in force. He testified that the average person would not understand the features in this type of insurance policy. He could not condone an agent's misrepresentation that an [IDS Life Flexible Premium Adjustable Whole Life Insurance Policy] would remain in at a level premium for the life of the policy.

The Richards made their monthly premiums of $500[.00] for the next seven (7) years, and [Bouchard] remained their financial advisor. In 2000, in preparation for the Richards' annual review, [Bouchard] conducted an in force Illustration [which indicated] that the Policy might lapse within the next [five (5)] years due to fluctuation of interest rates. The interest rates had fallen to 6.25%.

When [Bouchard] met with the Richards in 2000, he informed them of the indications that the Policy may lapse in the future. This would have been the first time the Richards were made aware that the policy was not as it had been represented by [Bouchard] at the time of purchase.

While [Bouchard] testified at trial that it was Mr. Richards who first approached [Bouchard] stating that he wanted to pay a lump sum into the [Policy] so that he could pay off his premiums sooner than scheduled, this testimony was rejected. Bouchard prepared illustrations demonstrating how various lump sum payments would affect the Policy performance, but it was decided that a [$15,053.09] prepayment was needed. This necessity was evidenced by . . . a document titled "Explanation of Transaction," and the fact that there was no advantage in paying [$15,053.09] into the [Policy] that one would never get back, only to make the cost of the Policy higher.

The "Explanation of Transaction" is an internal document showing where the [$15,053.09] payment is coming from, in this case, [Appellees'] mutual fund. At the bottom of the document are Mr. Richards' and [Bouchard's] signatures and [Bouchard's] handwritten note explaining the reason for the movement of the mutual funds into the [Policy]: "added to life chase value to allow a reduction of future premiums," but also "to keep the Policy in force due to lower than expected interest rates." While [Bouchard] insisted that a lapse was not the main reason for the [$15,053.09] payment, that testimony was not believed. Paired with the Illustration indicating a future policy lapse and the

-15-

absence of any advantage in making the lump sum payment for the reason Bouchard proffered, the possibility of the Policy lapsing after the Richards had paid tens of thousands [of dollars] in premiums would have been catastrophic.

After signing the "Explanation of Transaction" the Richards received the funds from the mutual fund account and wrote a $15,053.09 check to [Appellant's] corporation . . . with the noted reason: "for Jim's insurance." Having been advised by their financial advisor that their insurance policy was in trouble of lapsing and it needed a lump sum payment to keep it in force, [the court] found that the Richards relied on [Bouchard] in making that payment.

The [c]ourt found negligent misrepresentation inapplicable here because the corporation's documents used in the sales presentation as well as the financial advisor's misrepresentation as to the cost of the [Policy] were not negligent misrepresentations. They were intentional misrepresentations as to the cost of the [Appellees Policy]. [The court found] that the misrepresentations made by the financial advisor were fraudulent. Under the [UTPCPL, Appellants] succeeded in proof of fraud by a preponderance of the evidence.

Trial Court Opinion, filed 9/21/16, at 4-6.

The record supports the court's conclusion. It was within the province of the court as the fact-finder to believe Mrs. Richards's testimony and deduce from the Policy Illustration, insurance application, and the corporate representative that in 1994 Bouchard misrepresented that the cost of the Policy would only be $500.00 per month. **See Wyatt**; **Yocca**. It was also within the province of the court as the fact-finder to find the Richards justifiably relied upon Bouchard's 1994 misrepresentation and his subsequent 2000 representation that a lump sum payment into the Policy was necessary to prevent it from lapsing, especially given the relationship

between the parties as financial planner and client. *See Wyatt*; *DeArmitt*. The Richards' suffered an ascertainable loss at the payment of $15,053.09 into the Policy. *See* 73 P.S. § 201–9.2(a).

With regard to Appellants' specific claim that Appellees failed to prove they suffered an ascertainable loss *as a result* of Bouchard's representation, this contention is without merit. Appellees met their burden by a preponderance of the evidence. *See Weinberg*; *Boehm*. The "Explanation of Transaction" stated the Richard's payment was designed to "keep the policy in force due to lower than expected interest rates" and Bouchard's testimony indicated that the Policy would not increase its cash value upon the payment of the lump sum:

> [The court]: Am I missing something here? Because I think you said yesterday he doesn't get that added cash value.
>
> [Bouchard]: No.
>
> [The court]: If he dies, he doesn't get the added cash value and the 100,000.
>
> [Bouchard]: Exactly.
>
> [The court]: He only gets the 100,000.
>
> [Bouchard]: And he knew that.

N.T., Trial, 11/4/14, at 252. The court interpreted this testimony as support for the reasoning behind why the Richards made a lump sum payment into the Policy—to keep the Policy in force and prevent it from lapsing. *See Weinberg*; *Boehm*. In a light most favorable to Appellees as the verdict

winner, we observe Appellees met their burden of proof on causation under the UTPCPL. *See Wyatt*; *Monumental Properties, Inc.*.

To the extent Appellants argue that the court's dismissal of Appellees' fraudulent misrepresentation and negligent misrepresentation claims necessarily precludes a verdict on the UTPCPL claim because the elements of each offense are similar, this claim fails. Under the pre-amended version of the UTPCPL, a plaintiff must establish common law fraud by a preponderance of the evidence by showing that she justifiably relied on the defendant's wrongful conduct or representation and that she suffered harm as a result of that reliance. *See Yocca*. The burden of proof to demonstrate common law fraud, on the other hand, must be shown by clear and convincing evidence. *See Weissberger v. Myers*, 90 A.3d 730, 735 (Pa. Super. 2014) (explaining that a party proving fraud must meet the more exacting standard of clear and convincing evidence, which is a higher standard of persuasion than mere preponderance of the evidence). And negligent misrepresentation requires the existence of a duty owed by one individual to another. *See Heritage Surveyors & Engineers, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1252 (Pa. Super. 2002) ("The elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words. Moreover, like any

action in negligence, there must be an existence of a duty owed by one party to another.") Thus, each claim has separate and distinct elements that must be proven according to its applicable burden of proof. Based on the foregoing, the trial court correctly found Appellees met their burden for the UTPCPL claim, but failed to meet their burden for the misrepresentation claims.

Regarding Appellants claim that the trial court erred in awarding all of Appellees' attorneys' fees and costs under the UTPCPL, this argument is meritless. We are mindful that we may not disturb a trial judge's assessment of these amounts unless there has been an abuse of discretion. ***See Neal v. Bavarian Motors, Inc.***, 882 A.2d 1022, 1029 (Pa. Super. 2005). Under the UTPCPL, the following factors should be considered when assessing the reasonableness of counsel fees:

> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) The customary charges of the members of the bar for similar services; (3) The amount involved in the controversy and the benefits resulting to the clients from the services; and (4) The contingency or certainty of the compensation.

***Sewak v. Lockhart***, 699 A.2d 755, 762 (Pa. Super. 1997) (quoting ***Croft v. P. & W. Foreign Car Service***, 557 A.2d 18, 20 (Pa. Super. 1989)).

Subsequently, in ***McCauslin***, this Court held that prior to awarding counsel fees to a plaintiff on a UTPCPL claim, the defendant must have "a fair opportunity to address" the legitimacy of the claim. In remanding the case for further proceedings, this Court made the following observations: (1)

there should be "a sense of proportionality between an award of damages [under the UTPCPL] and an award of attorney's fees," and (2) whether plaintiff has pursued other theories of recovery in addition to a UTPCPL claim "should [be] given consideration" in arriving at an appropriate award of fees. 751 A.2d at 685–686.

Here, the trial court provided the following reasoning for the award of Appellees' attorneys' fees and costs:

> The present case was filed in 2001. One of the [Appellees], Mr. James Richards, passed away in February of 2005. Proof of misrepresentation became much more difficult after that occurrence. It was essential that [Appellees] obtain from [Appellants] the corporate documents establishing, in addition to witness testimony, that [Appellants'] sales practices were more than just misleading, but that the consumer was deceived and defrauded as to the nature of the product they sold. Much pretrial discovery was required, and [Appellees] needed to withstand a [m]otion for [s]ummary [j]udgment. The case was complex.
>
> There is precedent for a similar award of attorneys' fees in **Boehm**. [Appellees'] counsel in the present case was the same Plaintiff's counsel in **Boehm**. [Appellees'] counsel requested the same hourly rate which was approved in **Boehm** at $400.00 per hour. [Appellees'] counsel removed the non-UTPCPL [work in their petition] as required by **Neal**.

Trial Court Opinion, filed 9/21/16, at 7.

We agree. And the record supports the court's conclusion. This case involved the sale of a universal life insurance policy, which is a complicated instrument, and the complaint allegations required that counsel understood how these policies work and the regulations that apply to them. Customary charges from other members of the bar range from $275 to $400 per hour.

-20-

Appellees received $34,006.44 in restitution and $102,019.32 in treble damages as a result of counsels' services in the face of corporate adversaries with greater resources than Appellees, and counsel did so on a contingent basis for approximately thirteen years. ***See Sewak***. Based on the foregoing, there seems to be proportionality between the award of damages and attorneys' fees and costs. ***See McCauslin***. Accordingly, the trial court properly imposed the attorneys' fees and costs in the amounts of $84,072.50 to Behrend and Ernsberger, P.C., and costs in the amount of $1,759.58, and counsel fees in the amount of $26,840.00 for the Massa Law Group. ***See Neal***.

With respect to Appellants' assertion that the court improperly imposed both punitive damages and treble damages upon Appellants in contravention to the UTPCPL, we agree. The trial court had the discretion to award to treble damages, but the trial court was prohibited from imposing punitive damages under the statute. ***See*** 73 P.S. § 201–9.2(a); ***see also McCauslin***. Here, the trial court imposed $50,000.00 in punitive damages against Appellants. This action was improper, and accordingly we reverse the award of punitive damages and remand this issue to the trial court for a recalculation of damages excluding the $50,000.00.

Judgment affirmed in part and reversed in part. Motion denied. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2016