J-A22004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN AND DEVON SEREDA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CENTER CITY ACQUISITIONS, LLC; | : | |
| NOAH OSTROFF | : | |
| | : | No. 239 EDA 2019 |
| Appellants | : | |

Appeal from the Judgment Entered February 13, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  160603888

BEFORE:   MURRAY, J., STRASSBURGER, J.*, and PELLEGRINI, J.*

MEMORANDUM BY MURRAY, J.:                **FILED OCTOBER 11, 2019**

Center City Acquisitions, LLC (the LLC) and Noah Ostroff (collectively,

Appellants) appeal from the judgment entered, following a bench trial, against

them jointly and severally and in favor of John and Devon Sereda.[1]  In this

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Appellants filed a notice of appeal on January 14, 2019, following the denial of their post-trial motion, but before judgment was entered on February 13, 2019.  ***See Johnston the Florist, Inc. v. Tedco Constr. Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*) ("[A]n appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions.").  Nevertheless, we deem Appellants' appeal as filed from the subsequently-entered judgment.  ***See id.*** at 514-515 ("[T]here are some instances wherein a party has failed to enter judgment [due to oversight] and our appellate courts may 'regard as done that which ought to have been done.'").

breach of warranty matter, Appellants aver that the trial court erred in: (1) piercing the corporate veil to find Ostroff personally liable; (2) finding that the Seredas properly informed Appellants under the warranty about water damage; and (3) awarding damages under the Pennsylvania Unfair Trade Practices and Consumer Protection Law[2] (UTPCPL).  Upon review, we affirm.

"Ostroff is the president, acting officer, and sole shareholder of the LLC." Trial Court Opinion, 3/12/19, at 6.  In June of 2012, the Seredas prepared to buy a newly-constructed home, at 1219 N. 3rd Street in Philadelphia, from Appellants, for the purchase price of $386,600.  On June 27, 2012, the Seredas completed a pre-settlement walk-through inspection of the property with their realtor, Ryan Kanofsky.[3]  N.T. Trial, 10/3/18, at 61-62, 138, 146. They identified 40 to 50 gaps between hardwood floor planks on all three floors and marked them with blue tape.  *Id.* at 61-62, 111, 139, 147.  Some of the gaps were large enough that quarters and nickels could be placed in them. *Id.* at 72.  The Seredas prepared a "punch list," or a list of "cosmetic issues" for Appellants to resolve, which included the gaps in the hardwood-floors.  *Id.* at 30.

The parties closed on the property on July 2, 2012, and the "punch list"

---

[2] 73 P.S. §§ 201-1 – 201-9.3.

[3] Devon Sereda and Kanofsky first walked through the property together.  N.T. Trial, 10/3/18, at 139, 146.  Later that day, John Sereda walked through the property alone.  *Id.* at 111, 143.

was incorporated into the sale agreement. N.T. Trial, 10/3/18, at 30. The sale agreement also included a "Builder's Warranty," to be in effect for one year from the date of settlement. It provided:

6. Claims Procedure

If a defect appears which is covered by this Warranty, [the Seredas] must submit a written notice to [Appellant] describing the nature of the problem. . . .

7. Repairs

Upon receipt of [the Seredas'] notice of a defect, if the defect is covered by this Warranty as determined by the Warranty, [Appellants] will repair or replace said defect at no charge to [the Seredas.] Said repair work will only be done by [Appellants] or its subcontractors[. Appellants have] the sole option and absolute right to choose between repair or replacement of any defective or damaged item [p]rovided that doing so the repair is to a reasonably acceptable workmanlike condition [sic].

Builder's Warranty, 7/2/12, at 2; Ex. B to Seredas' Complaint.

On August 1, 2012, John Sereda sent an email to Ostroff, again notifying Ostroff of the gaps in the hardwood floors and other issues. N.T. Trial, 10/3/18, at 62. According to John Sereda, Ostroff responded that the gaps were due to "acclimation of the floors" and that the Seredas should observe the floors "[o]ver time . . . and see if it's expansion and contraction." *Id.* at 66. However, the floors did not improve and John Sereda "continued to notify [Ostroff] of the gapping." *Id.* One year later, on August 7, 2013 — "after two months of [John Sereda] trying to get [Ostroff] out to [see] the property" — Ostroff visited the home and observed the gaps. *Id.* Ostroff then

directed "Ray," the contractor who installed the floors, to replace three or four hardwood planks in the second-floor bedroom.[4] *Id.* at 70-71, 78-79. Thereafter, however, Ray acknowledged that gaps still existed. *Id.* at 71, 78. Meanwhile, the Seredas were advised by other flooring contractors — and the Seredas told Ostroff — that sanding and replacement of some planks would not resolve the gaps, and instead, the entire floor had to be replaced with new hardwood. *Id.* at 71, 78, 82-83.

In October of 2013, Ostroff sent the Seredas an email, offering to either have the gaps filled and the floors restained, or give them a $2,500 credit. N.T. Trial, 10/3/18, at 70, 73-74. The parties continued to communicate by email for several months about the floors as well as other construction issues. On March 28, 2014, John Sereda emailed Ostroff, requesting information about repairs from the pre-settlement punch list, and stating he would file a lawsuit if Ostroff did not provide the information. *Id.* at 81-81. Ostroff replied that same day:

> "We have your best interests in mind. John, do not threaten me ever again. I will respond when I have a plan for you. I am waiting for Ron [a contractor] to get back to me.
>
> If I get any more threats from you, I will turn this over to my attorney and have him deal with this, and nothing will get accomplished, and it will cost you a lot of money, time, and aggravation.
>
> I have also sent you four emails on a credit for the floors which you have failed to respond to. My offer will not remain

---

[4] The record does not include Ray's last name.

forever. I will be looking for a response on this issue ASAP. I would like to be done with you and this house ASAP. Thank you."

*Id.* at 82.

At trial, John Sereda acknowledged that he and his wife had not responded to Ostroff's previous four emails offering a credit. N.T. Trial, 10/3/18, at 82. However, after Ostroff's March 28, 2018 missive, John Sereda rejected Ostroff's offer. *Id.* John Sereda reiterated that the Seredas "have been told by several flooring installer/contractors, including two of [Ostroff's] own hired flooring installers, that the floors need to be replaced throughout the home," and that "[a] $2,500 credit is not even close to what that will cost." *Id.* at 84. He also testified: "We bought things new, and we wanted the floors to be the way they were supposed to be, so . . . that's why we rejected" Ostroff's offer to fill the gaps or give them $2,500. *Id.* at 121.

On cross-examination, John Sereda disagreed that Ostroff had offered "a complete repair of the floor at the builder's expense." N.T. Trial, 10/3/18, at 121. In response to Appellants' counsel's continued questioning, John Sereda explained: "Repairs, no. I guess you have to define 'repair.' For me, at that point, . . . a repair would be a full-scale repair, meaning replacing all the hardwood floors based on the prior context [*sic*]." *Id.* at 121-122. Immediately following this statement, the trial court observed:

> The two of you are disagreeing over an undefined word. One of you may think "repair" means one thing. The other has a different definition of "repair."
>
> I think it's pretty clear that the offer to fill in the gaps, refinish

- 5 -

the floor, if you call that a repair, was an unacceptable repair. The repair that was being sought was pulling up the floors and putting down new floors.

*Id.* at 122. Finally, the Seredas presented an expert report, which opined that the cost to replace the hardwood floors would be $37,789. *Id.* at 167.

Meanwhile, unrelated to flooring, in the spring of 2013, the Seredas observed "cracking" and "separation" in the bay window frames in their two second-floor bedrooms. N.T. Trial, 10/3/18, at 50 (testimony of John Sereda), 149 (testimony of Devon Sereda). On April 20, 2013, the Seredas emailed Ostroff a second "punch list" of 31 items to be repaired, including the hardwood floors and the bedroom-windows. *Id.* at 32-33. With respect to the windows, Devon Sereda testified that initially there was no water infiltration, but the "cracking and separation" grew and, by the fall of 2013, rain water began coming through the cracks. *Id.* at 149. In March of 2014, a contractor, Ron Rooney, at Ostroff's direction, "tried to fix various parts of the house," including applying caulk around the bedroom windows. *Id.* at 90. After "a couple days," however, the caulk "expanded or deteriorated." *Id.* at 100. On April 30, 2014, John Sereda emailed Ostroff that the cracks reappeared in both bedroom windows. *Id.* at 95. In another email dated May 3, 2014, John Sereda notified Ostroff that Rooney told John Sereda that Rooney should have used — but did not use — silicone caulk; Rooney further told John Sereda that if "the root of the issue [was something] other than cracking [at] the entry point of the water[,] it was likely out of [Rooney's]

expertise." *Id.* at 96. Both John and Devon Sereda testified that Ostroff made no other offer or attempt to repair the windows. *Id.* at 102, 152.

At the time of trial in October 2018, water continued to leak through the windows, necessitating bowls and towels "to collect the pools of water when it drips." *Id.* at 98-99, 149-150. The Seredas had contractors examine the windows, and one advised that the cause of the cracking could not fully be determined unless "the facade is removed around the window," which would cost more than $20,000 — an amount that the Seredas could not afford. *Id.* at 151. Devon Sereda testified that whenever they anticipate a rainstorm or go on vacation, they must move all of their electronic equipment away from the window, and the windows have caused "a lot of stress and aggravation." *Id.* at 152. The Seredas offered an expert report that estimated the cost to replace the windows as $22,000. *Id.* at 38, 166. The Seredas did not seek damages for any wood rot or mold in the wall, and requested only that the windows be repaired. *Id.* at 151-152, 166.

With respect to the trial court's decision to pierce the corporate veil to find Ostroff severally and jointly liable, both John and Devon Sereda testified that the only person they interacted with at the LLC was Ostroff. N.T. Trial, 10/3/18, at 90, 157-158. Devon Sereda stated that their "dealings were always with [Ostroff]" and that they "never dealt with anybody else but" Ostroff. N.T. Trial, 10/3/18, at 156. Devon Sereda stated:

> My understanding was that [Ostroff] was our seller. He's the guy that purchased the lot, and he's the one that we

communicated with throughout the process. I never saw anyone else. All our meetings regarding the building specs, all of our email communications were only with Noah@PhillyLiving.com.

We had his personal cell phone number. It wasn't like a business number. When we would call, it would say on his voice mail Noah Ostroff.

*Id.* at 157-158. Finally, we note Devon Sereda's testimony that generally, in 2013, Ostroff was "responsive to particular issues" — if the Seredas sent him an email about four issues, Ostroff only responded to two issues. *Id.* at 155. However, in 2014, their "requests started to be ignored." *Id.*

The Seredas commenced this lawsuit on July 1, 2016, by filing a praecipe to issue a writ of summons. Their second amended complaint raised counts of, *inter alia*: (1) breach of contract for the LLC's failure to fix the hardwood floors; (2) breach of implied warranty of habitability and reasonable workmanlike construction for the LLC's failure to fix the hardwood floors and windows; and (3) violations of the UTPCPL against both Appellants, for their alleged intentional failure to honor the terms of the warranty.[5]

The case proceeded to a bench trial on October 3, 2018. John and Devon Sereda both testified as summarized above, and presented the testimony of their realtor, Ryan Kanofsky. The Seredas also presented, over

_____

[5] The second amended complaint also raised a count of negligence against Appellants, which was stricken by the trial court on Appellants' preliminary objections. *See* Order, 12/27/17. On January 30, 2018, an arbitration panel found in favor of the Seredas and against the LLC, and awarded the Seredas $36,789.47. However, the panel found in favor of Ostroff and against the Seredas. The Seredas appealed to the trial court.

Appellants' objection, their expert reports, as well as the deposition testimony of Ostroff.

Appellants did not testify or otherwise present a defense.

The trial court issued its decision on October 9, 2018. It found both Appellants jointly and severally liable to the Seredas for damages in the amount of $136,087.49. In doing so, the court pierced the corporate veil, finding that the LLC is both the alter ego of Ostroff and "a sham company constituting a façade for Mr. Ostroff's operations." Trial Court Opinion, 3/12/19, at 6. The court also found that Ostroff's conduct with respect to both the floors and windows violated the UTPCPL. The court awarded the estimated $36,789 for the floors from the Seredas' expert report. N.T. Trial, 10/4/18, at 21. For the windows, however, the court assessed treble damages on the Seredas' expert report estimate of $22,840, for a total of $68,520. *Id.* at 30-31. Although Appellants disputed these amounts, the trial court pointed out, and Appellants conceded, that Appellants did not present any evidence to refute the reports. N.T. Trial, 10/3/18, at 183. Finally, the court awarded the Seredas litigation costs of $10,014.11 and attorneys' fees of $20,764.38.

Appellants filed a timely post-trial motion, which the trial court denied on December 17, 2018. Appellants then filed a notice of appeal on January 14, 2019 and, at the trial court's direction, a Pennsylvania Rule of Appellate Procedure 1925(b) statement of errors complained of on appeal. On February 13, 2019, Appellants filed a praecipe with the trial court clerk to enter

judgment, and judgment was entered. The trial court issued an opinion on March 12, 2019.

On appeal, Appellants present the following issues:

1. Did the Trial Court incorrectly pierce the corporate veil by finding Noah Ostroff personally liable as an officer of Center City Acquisitions, LLC?

2. Did the Trial Court incorrectly award [the Seredas] damages for water intrusion and/or water damage stemming from the Property at issue's second-floor windows?

3. Did the Trial Court incorrectly award [the Seredas] the maximum treble damages under the [UTPCPL] by finding that . . . Appellant Noah Ostroff acted in an intentionally misleading fashion warranting justifiable reliance?

4. Did the Trial Court incorrectly award [the Seredas] the maximum treble damages under the [UTPCPL] by finding that . . . Appellant Noah Ostroff acted with an intent to disregard the one (1) year Builder's Warranty?

Appellant's Brief at 10.

In their first issue, Appellants aver that the trial court erred in piercing the corporate veil under the participation theory to find Ostroff personally liable as an officer of the LLC. Appellants argue that the record does not establish that Ostroff personally acted in tort, or that his conduct rose to the necessary level of malfeasance, but "[a]t best," his conduct was "nonfeasance." Appellants' Brief at 20-23. Appellants further maintain that they "had every reason to believe that [the LLC's] subcontractors built a perfectly suitable home" and that Ostroff "undertook efforts to remediate defects," including offering the Seredas "a choice of having the flooring

- 10 -

repaired in its **entirety** or a monetary credit." *Id.* at 23-24 (emphasis in original). Appellants also cite the Seredas' "delay of at least five months in responding to [their] offer." *Id.* at 24.

We first note the general standard of review:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

*Richards v. Ameriprise Fin., Inc.*, 152 A.3d 1027, 1034 (Pa. Super. 2016) (citation omitted).

The doctrine of "piercing the corporate veil" is distinct from the participation theory for finding liability: "There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any liability-creating act performed behind the veil of a sham corporation." *Vill. at Camelback Property Owners Ass'n v. Carr*, 538 A.2d 528, 533 (Pa. Super. 1988).

"Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore, its acts are truly his." *Vill. at Camelback Property Owners Ass'n*, 538 A.2d at 533. "[T]here is a strong presumption in Pennsylvania against piercing the

corporate veil. Also the general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person." ***Advanced Tel. Sys. v. Com-Net Prof'l Mobile Radio, LLC***, 846 A.2d 1264, 1277-1278 (Pa. Super. 2004). A court may pierce the corporate veil when equity requires it to prevent fraud, illegality or injustice. ***Vill. at Camelback Property Owners Ass'n***, 538 A.2d at 533. The corporate veil may be pierced under the "alter ego" theory, which applies "where the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable." ***Miners, Inc. v. Alpine Equip. Corp.***, 722 A.2d 691, 695 (Pa. Super. 1998) (emphasis removed).

On the other hand, a claim under the participation theory is "an attempt to assess direct liability in tort against a person acting as an officer or director of a corporation." ***Vill. at Camelback Property Owners Ass'n***, 538 A.2d at 533.

> Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

***Id.*** (citation omitted).

> To impose liability on a corporate officer pursuant to the participation theory, a plaintiff must establish that the corporate officer engaged in misfeasance, *i.e.*, "the improper performance of an act." However, a corporate officer cannot be held personally liable for nonfeasance, *i.e.*, "the omission of an act which a person ought [ ] to do."

***Shay v. Flight C Helicopter Servs.***, 822 A.2d 1, 17 (Pa. Super. 2003) (citations omitted).

Here, in finding Ostroff personally liable, the trial court reasoned:

Noah Ostroff, stated plainly, is Center City Acquisitions, LLC. Mr. Ostroff is the president, acting officer, and sole shareholder of the LLC. **The LLC is a mere alter ego** of [Ostroff. The Seredas'] dealings throughout the sale and management of the property were all directly with [Ostroff. Ostroff] controlled the corporation and used it to further his own personal interests by selling a house that did not meet expectations, then refusing to honor the warranty. When [Ostroff's] offer of a mere $2,500 to correct a $37,000 issue was denied, [Ostroff] hoped to skirt liability by invoking the protections of his LLC. Center City Acquisitions, LLC is a **sham company** constituting a façade for Mr. Ostroff's operations. As [the trial court stated at trial], "It would be an injustice to the [Seredas] to allow Mr. Ostroff to hide behind a corporation when he is the sole — not just the primary but the sole — actor to this entire transaction. He bought the land. He built the house. He promised a warranty. There was no 800 number. If you had a problem with your house, you called Mr. Ostroff." [N.T. Trial, 10/4/18, at 20.] In order to avoid an injustice to [the Seredas], it is appropriate to pierce the corporate veil with regards to [Ostroff].

Trial Court Opinion, 3/12/19, at 6 (emphases added).

As Appellants point out, the trial court's discussion referred to both piercing the corporate veil under the alter ego theory and assessing liability under the participation theory.[6] Nevertheless, we agree with its finding under

---

[6] Appellants acknowledge that the trial court's opinion "found that the LLC is a mere alter ego of" Ostroff. Appellants' Brief at 25-26. Nevertheless, Appellants contend that the court did not truly apply the alter ego theory because its opinion did not discuss the necessary factors set forth in ***Lumax Indus. v. Aultman***, 669 A.2d 893 (Pa. 1995) ("***Lumax***"). ***See Lumax***, 669 A.2d at 895 (factors to be considered in disregarding the corporate form are:

the participation theory to find Ostroff personally liable.[7] *See Shay*, 822 A.2d at 17; *Vill. at Camelback Property Owners Ass'n*, 538 A.2d at 533. Appellants' insistence that Ostroff offered to repair the floors in their "entirety" ignores: (1) John Sereda's testimony that several flooring contractors, including Appellants' own contractor who installed the floors, advised that repairs were not feasible and instead, the floors would have to be replaced, N.T. Trial, 10/3/18, at 71, 78, 82-83; (2) John Sereda's specific denial, at trial, that Ostroff offered a "complete repair" and the trial court's observation, not disputed by Appellants, that the parties had differing opinions as to what constituted an adequate "repair," *id.* at 121-122; (3) John Sereda's undisputed testimony that Ray, the contractor who installed the floors, replaced 3 or 4 hardwood planks and subsequently acknowledged that the gaps remained, *id.* at 78; and (4) John and Devon Sereda's undisputed testimony that $2,500 was wholly insufficient to cover the cost of replacing all the hardwood floors. *Id.* at 84, 155. The weight of the above testimony was for the trial court to determine. *See Richards*, 152 A.3d at 1034. Further, Appellants do not address the undisputed trial testimony that, aside from one

---

undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud). Because we affirm on the basis of the trial court's participation-theory discussion, we need not address this argument.

[7] "This Court may affirm on any basis." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 892 (Pa. Super. 2011).

unsuccessful application of the wrong kind of caulk, Ostroff took no action to repair the windows. Appellants do not claim that the Seredas' repeated requests for window repairs were unfounded, yet offer no explanation why they failed to act on them. We agree with the trial court that Ostroff's conduct amounted to misfeasance, and therefore the court did not err in holding Ostroff personally liable under the participation theory. *See Shay*, 822 A.2d at 17.

In their second issue, Appellants aver that the trial court erred in awarding damages for water intrusion from the bedroom windows. Appellants contend that the Seredas failed to provide written notice specifically "of 2nd floor water leaks or 2nd floor water intrusion within one year," as required by the warranty. Appellant's Brief at 27. We disagree.

Appellants do not dispute that the Seredas emailed Ostroff on April 20, 2013 about cracks in the second-floor bedroom windows and emailed Ostroff again on April 30, 2014, notifying him that Ron Rooney's attempts to caulk the windows failed and cracks had reappeared. Appellants instead emphasize that the Seredas did not specify that there was also water damage. This argument is misplaced. The Seredas clearly and timely advised Ostroff of cracks along the windows and requested that they be repaired. On appeal, Appellants overlook Devon Sereda's testimony that she and John were **not** seeking damages for any water damage, such as rot, mold, or other water infiltration issues, and instead, only sought damages for repairs to the

windows:

> [W]e're not looking for [damages for wood rot or mold behind the wall. W]e just want the windows repaired. That's the only thing we've wanted since April of 2013 when we wrote that email. We just want them repaired.

N.T. Trial, 10/3/18, at 151-152. Accordingly, Appellants' claim that the Seredas failed to notify them specifically of water damage does not merit relief.

We address Appellants' last two issues together because they raise overlapping claims that the trial court erred in awarding treble damages under the UTPCPL where, according to Appellants, the record did not establish that Ostroff "acted in an intentionally misleading fashion warranting justifiable reliance," or that Ostroff "acted with any intent to disregard the one year builder's warranty." Appellants' Brief at 28, 33. Appellants reiterate that Ostroff "offered . . . to repair the defects in the property at the company's expense," this "offer was rejected much later,"[8] the Seredas "failed to produce written notice of water intrusion pursuant to the Builder's Warranty," "and the record contains numerous instances of efforts to fix the cracks in the windows." *Id.* at 31, 34. Appellants also assert that the trial court improperly

---

[8] The statement of questions involved and headings in Appellants' brief purport to challenge the treble damages only, which were awarded with respect to the windows, but not the floors. *See* N.T. Trial, 10/5/18, at 5-6; Appellants' Brief at 10, 28, 33. However, Appellants' discussion refers to the floors as well. Appellants' Brief at 31, 34. We construe Appellants' argument to challenge the UTPCPL awards for both the windows and floors.

awarded treble damages "based upon speculative estimates for repairs." *Id.*

This Court has explained:

> The UTPCPL is Pennsylvania's consumer protection law. It seeks to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." 73 P.S. § 201-3. . . . Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection.
>
> The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" because of an unlawful method, act or practice. *See* 73 P.S. § 201-9.2(a). Upon a finding of liability, the court has the discretion to award "up to three times the actual damages sustained" and provide any additional relief the court deems proper. *Id.* . . .

*Richards*, 152 A.3d at 1034-1035 (some citations omitted).

Section 201-2(4) sets forth conduct that amounts to "unfair methods of competition" and "unfair or deceptive acts or practices." 73 P.S. § 201-2(4). It includes a "catchall provision," which includes "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4) (xxi); *Richards*, 152 A.3d at 1035.

> [A]ny deceptive conduct, "which creates a likelihood of confusion or of misunderstanding," is actionable under 73 P.S. § 201-2(4)(xxi), whether committed intentionally (as in a fraudulent misrepresentation), carelessly (as in a negligent misrepresentation), or with the utmost care (as in strict liability). Whether a vendor's "conduct has the tendency or capacity to deceive . . . is a lesser, more relaxed standard than that for fraud or negligent misrepresentation."

*Gregg v. Ameriprise Fin., Inc.*, 195 A.3d 930, 939 (Pa. Super. 2018).

The Seredas' second amended complaint alleged that Appellants misrepresented that the Property was constructed and/or conformed to

- 17 -

accepted workmanlike standards when, in fact, it did not; the Seredas reasonably relied on these misrepresentations; Appellants intentionally failed to honor the terms of the warranty, which amounted to an "unfair or deceptive practice" under "the catchall provision" of the UTPCPL, sub-section 201-2(4)(xxi); and Appellants' conduct proximately caused the Seredas to suffer damages. Seredas' Second Amended Complaint, 11/2/17, at ¶¶ 63-68.

In finding Appellants' conduct with respect to both the floors and windows violated the UTPCPL, and awarding treble damages with respect to the windows, the trial court explained:

> The record is flush with testimony regarding [the Seredas'] repeated pleas with [Ostroff] to fix the cracking in the windows which was causing water infiltration. [Ostroff] consistently delayed or ignored their pleas. When [the Seredas] told [Ostroff] they would seek legal action if the warranty was not honored, [Ostroff] challenged them, telling them to never threaten him again. [Ostroff] made it clear that the only remedy [the Seredas] would have was a $2,500 offer, which "would not remain forever." [N.T. Trial, 10/3/18 at 82. The Seredas] were forced to endure years of water infiltration because [Ostroff] did not uphold his end of the deal.
>
> [Ostroff's] actions regarding the flooring did not rise to a level requiring additional punitive or remedial damages to be assessed. However, with regards to the water infiltration, as the Court stated, "The window, the delay in honoring the warranty, in doing something to fix the window, not only created inconvenience and concern for the homeowners, but, more importantly, there's a real likelihood that it created more damage. If you don't go in and stop the water, you wind up with water damage, which is at least mold if not rot." [*Id.* at 30.] For those reasons, the damages associated with the water damage were trebled to the maximum.
>
> [Ostroff] misled [the Seredas] into believing the errors in their home would be corrected by promising a builder's warranty. [Ostroff] acted intentionally in disregarding the builder's warranty

- 18 -

by offering a fraction of the required amount and threatening to take that off the table as well, likely believing he would be shielded by his LLC. In order to both discourage [Ostroff] from reoffending and to remedy the harm [Ostroff's] inaction caused, the maximum treble damages were appropriate and justified.

Trial Court Opinion, 3/12/19, at 8-9.

Appellants' claims that it did not intentionally mislead the Seredas or intentionally disregard the warranty are meritless, as the catchall provision of the UTPCPL does not require an actor's intent, as usually contemplated in a fraudulent or negligent misrepresentation claim. **See Gregg**, 195 A.3d at 939. We reiterate that the trial court, as the factfinder, was free to weigh the evidence that Ostroff offered to fill and resand the hardwood floors, but the Seredas believed that such remedy was inadequate; Ostroff's own contractor, who installed the floors and replaced 3 or 4 planks acknowledged that gaps remained; the Seredas timely notified Ostroff in writing about cracks along the windows, and Ostroff's only attempt to repair the windows was to have a contractor apply caulk; that contractor subsequently acknowledged he used the wrong caulk and any issue more serious than caulk was beyond his expertise; the Seredas promptly notified Ostroff that the caulk deteriorated after several days and the cracks remained; and the Seredas' testimony throughout trial that Ostroff was slow to, or failed to, respond to their repeated requests for repairs. With respect to Appellants' contention that the amount of Seredas' requested damages was speculative, we note that the trial court's accurate observation that Appellants presented no evidence contradicting or

refuting those amounts.  Thus, we find no merit to Appellants' claims.

In sum, we discern no error by the trial court in finding Ostroff and the LLC jointly and severally liable to the Seredas and awarding damages under the UTPCPL.  We therefore affirm the trial court.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/11/19